Daniel Libbey
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
Phone: (907) 258-1815
Fax: (907) 258-1822
dan@libbeylaw.com

Attorney for Plaintiff Gabrielle Chipps

Colleen Libbey
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
Phone: (907) 258-1815
Fax: (907) 258-1822
colleen@libbeylaw.com

Attorney for Plaintiff Holly and Timothy Chipps

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| GABRIELLE CHIPPS, by and through her guardians, Holly Chipps and Timothy Chipps, and HOLLY CHIPPS and TIMOTHY CHIPPS, individually,<br><br>        Plaintiffs,<br><br>vs.<br><br>JAMES LOVELL, and DOES 1-10, Inclusive,<br><br>        Defendants, | **COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br>Case No: _____ |

Complaint For Damages
*Chipps, et al. vs. Lovell, James*
Page 1 of 84

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 1 of 84

<u>**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**</u>
<u>**(42 U.S.C § 1983—Violation of Civil Rights)**</u>

Gabrielle Chipps, by and through her guardians, Holly Chipps and Timothy Chipps, and Holly Chipps and Timothy Chipps, individually, by and through counsel, Libbey Law Offices LLC, bring this lawsuit against James Lovell:

## I.  <u>Introduction</u>

This is a Section 1983 civil rights action brought under federal laws.  On February 8, 2020, 21-year-old Gabrielle Chipps ("Gabby") attempted suicide in her isolated segregation cell while in the care of the State of Alaska, Department of Corrections ("SOA, DOC").  Upon her arrival to Wildwood Pretrial Facility, Gabby's first time in jail, on January 22, 2020, she was placed on suicide precautions and restricted from being in possession of any sharps or razors that she could use to harm herself with.

Despite having actual notice more than 10 years prior to this incident that SOA, DOC policies and practices for suicide prevention and segregation housing were in violation of federal standards and protocols, Defendants continued in these dangerous policies.  This resulted in many unnecessary inmate deaths and caused Gabby's injuries in this case.

SOA, DOC had many policies and procedures in place requiring suicide prevention actions to be taken for the safety of inmates like Gabby on suicide precautions.  Despite having ample notice that Defendants' policies and practices were in violation of national standards, and despite being well aware of Gabby's high risk for suicide, Defendants

Complaint For Damages                                                    Page 2 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 2 of 84

repeatedly violated SOA, DOC policies and procedures and failed to monitor and supervise Gabby after placing her in segregation housing, or to take any steps for her safety while she was in their care.

As a disciplinary measure, and as a punitive measure, Gabby was left unmonitored, ignored, and neglected in her isolated segregation cell, in violation of SOA, DOC policy and national standards and protocols. During this time, having been unmonitored, ignored, and neglected in her isolated segregation cell, Gabby hanged herself from her bedsheet wrapped around her neck and attached to her window. By the time she was finally checked by Defendants, Gabby had suffered severe permanent physical injury, and had become non-responsive.

Following Gabby's suicide attempt, and despite her immediate life-threatening condition, Defendants waited five hours before attempting to notify Gabby's parents, Timothy and Holly Chipps, of the circumstances and of her condition. This failure to notify Gabby's parents was in violation of SOA, DOC's policies and procedures on notification of family members in these circumstances.

Gabrielle is alive, but with serious and permanent debilitating physical injuries, requiring continued and extensive medical care for the rest of her life. But for Defendants' reckless and repeated violations of SOA, DOC policies and procedures in failing to address Gabby's high risk of suicide, including but not limited to, the failure to properly monitor her and provide her with necessary mental health treatment, Gabby would not have suffered

these injuries. Defendants repeatedly violated Gabby's State and Federal constitutional rights, causing her serious and permanent injury.

There is a related case 3:21-cv-00011-JMK with related allegations against State employees. This matter is a related case but against James Lovell who was not previously identified as a responsible party for the incident at issue.

## II.    Jurisdiction and Venue

1.    Jurisdiction is conferred upon this court pursuant to 28 U.S.C. Sections 1331 and 1343 and arises under 42 U.S.C. Sections 1983 and 1988.

2.    The relevant incidents complained of occurred in Third Judicial District of Alaska, therefore, venue is appropriate and properly lies with the court under 28 U.S.C. Section 1391.

## III.    Parties

### A. Plaintiffs in this case and Related Case 3:21-cv-00011-JMK

3.    Plaintiff Gabrielle Chipps is, and was at all relevant times hereto, an individual residing in the state of Alaska. Since February 8, 2020, she has been mentally incompetent, due to the physical injuries suffered as a result of the subject matter of this action, for the purposes of all legal proceedings.

4.    Plaintiff Holly Chipps is the mother and co-guardian/conservator of Gabrielle Chipps with standing to bring this action. Pursuant to Alaska Statutes 13.26.201-316 and 13.26.401-595, Holly Chipps was appointed co-guardian/conservator of Gabrielle Chipps by Alaska Superior Court Judge Jennifer S. Henderson on March 5, 2020.

Complaint For Damages                                                      Page 4 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 4 of 84

5.     Plaintiff Tim Chipps is the father and co-guardian/conservator of Gabrielle Chipps with standing to bring this action.  Pursuant to Alaska Statutes 13.26.201-316 and 13.26.401-595, Tim Chipps was appointed co-guardian/conservator of Gabrielle Chipps by Alaska Superior Court Judge Jennifer S. Henderson on March 5, 2020.

**B.  Defendants in this case and Related Case 3:21-cv-00011-JMK**

6.     The named Defendant in this case is James Lovell.

7.     Related Defendants are still noted below for reference as to the underlying facts.

8.     On information and belief, Defendant Shannon McCloud is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a superintendent employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity and as a supervisory defendant in her individual capacity.

9.     On information and belief, Defendant James Milburn is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was an assistance superintendent employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

10.     On information and belief, Defendant Gerad Siamani is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a correctional officer employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

Complaint For Damages                                                                          Page 5 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 5 of 84

11.     On information and belief, Defendant Beth Selby is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a mental health clinician employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity and as a supervisory defendant in her individual capacity.

12.     On information and belief, Defendant Dwight Stallman is a resident of Anchorage, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a forensic psychiatrist employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

13.     On information and belief, Defendant Allie White is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a correctional officer employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity and as a supervisory defendant in her individual capacity.

14.     On information and belief, Defendant Samuel Ambrosia is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a corrections nurse employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

15.     On information and belief, Defendant Stephen Barlow is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a correctional officer employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

16.     On information and belief, Defendant James Lovell is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint he was a sergeant and correctional officer employed by the State of Alaska, Department of Corrections.  He is sued in his individual capacity and as a supervisory defendant in his individual capacity.

17.     On information and belief, Defendant Mindy Lawrence is a resident of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint she was a correctional officer employed by the State of Alaska, Department of Corrections.  She is sued in her individual capacity and as a supervisory defendant in her individual capacity.

18.     Plaintiff does not know the true names of Defendant Does 1-10, and will amend the complaint to add the true names of the Doe Defendants when their identity is determined through discovery.

19.     On information and belief, Doe Defendants 1-10 are residents of Kenai, Alaska, in the Third Judicial District.  At all relevant times to this complaint, Defendant Does 1-10 were employed by the State of Alaska, Department of Corrections.  Defendant Does 1-10 are sued in their individual capacity and as a supervisory defendant in their individual capacity.

20.     On information and belief, each of the Doe Defendants were responsible in some manner for the acts and omissions alleged herein, and Plaintiffs will seek leave to

Complaint For Damages                                                                                   Page 7 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 7 of 84

amend and allege true identities and the respective responsibility when that information is ascertained through discovery.

## IV.    Factual Background

**A. Despite Actual Notice More Than 10 Years Prior to This Incident of Policies and Practices in Violation of Federal Standards and Protocols, Defendants Continued in These Dangerous Policies, Causing Gabby's Serious Permanent Injuries in This Case.**

21.    In 2008 and 2009, the American Civil Liberties Union of Alaska ("ACLU"), with the assistance of Yale Law School, conducted an in depth and detailed inspection and review of the SOA, DOC with the cooperation of the Commissioner of SOA, DOC.

22.    The ACLU worked closely with the special assistant to the Commissioner of SOA, DOC in developing drafts of the reports and in obtaining important data and information for the final report.

23.    The ACLU published the final report of its inspection and review of SOA, DOC in March 2010.

24.    In its findings, the ACLU found SOA, DOC suicide prevention policies to be in violation of national standards for suicide prevention in jails.

25.    In 2008, the National Commission on Correctional Health Care ("NCCHC") stated that inmates at risk for suicide should not be placed in segregation except where they are continually monitored, and instead should be housed in general population, a medical health unit, or medical infirmary, where they can be located close to staff and in cells with no protrusions of any type that could be used by an inmate for hanging.

Complaint For Damages                                                                 Page 8 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 8 of 84

26.     In 2010, SOA, DOC policy violated NCCHC standards by failing to require that inmates on suicide precautions are continually monitored while on suicide precautions in segregated housing.

27.     2010 SOA, DOC policy for inmates on suicide precautions provided two housing options, one "in general population with other prisoners, observed and closely supervised by staff" and another in "single cell/segregation" housing with close supervision which "may include" observation "every five to 15 minutes." Neither of these housing options complied with the 2008 NCCHC standard of continual monitoring for inmates on suicide precautions in segregation.

**B. SOA, DOC Policy More Than 10 Years Ago Violated NCCHC Standards By Universally Placing Inmates On Suicide Precautions Into Segregation Units and Violating Protocols for Assessment and Treatment of Suicide Risk Inmates.**

28.     More than 10 years ago, SOA, DOC policy was to place inmates on suicide precautions in segregated housing, as is demonstrated by SOA, DOC Policy form 807.20A, which states in pertinent part: "Suicide Precautions:  Subject prisoner is considered a risk for suicide.  Accordingly, the following suicide precautions are recommended.  <u>This prisoner is hereby recommended for placement in segregation by a mental health or medical professional.</u>" (emphasis in original).

29.     This policy is confirmed through numerous interviews conducted by ACLU more than 10 years ago showing SOA, DOC inmates on suicide precautions were nearly universally placed in seclusion by SOA, DOC in a segregation unit or intake cell.

Complaint For Damages                                                    Page 9 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 9 of 84

30. In 2008, the National Commission on Correctional Health Care recommended that prison health care providers identify and address the underlying reasons for the inmate's risk of suicide, as well as the treatment needs when the inmate is at heightened suicide risk, and follow-up treatment and strategies to prevent relapse.

31. The inmates interviewed by ACLU more than 10 years ago, however, reported both that they were placed in segregation as a result of their suicide risk, and that they did not receive any ongoing or follow-up treatment to address the underlying reasons for their suicide risk or mental health concerns.

**C. In 2015, A Governor Ordered Review of SOA, DOC Cited a Study Finding Inmates in Segregation Units Were Significantly More Likely to Commit Suicide, and Found Suicide Prevention Policy Had Not Been Updated In 20 Years.**

32. In 2015, the governor of Alaska appointed a team to conduct an administrative review on SOA, DOC, and issue a report, following several inmate deaths.

33. The 2015 report documented that the SOA, DOC had not updated its suicide awareness and prevention policy for 20 years.

34. The 2015 review cited to studies reporting on the negative impacts of segregation on inmates.

35. One such study cited by the 2015 report found that inmates with mental illness placed in segregated housing were significantly more likely to commit acts of fatal self-harm.

Complaint For Damages                                                                 Page 10 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 10 of 84

The 2015 report documented that SOA, DOC's policies and practices on the use of segregated housing for inmates warranted review "to ensure that it is being used sparingly and appropriately."

**D. The 2015 Review Concluded DOC Was Not Properly Responding to Suicide and Expressed Concern that the Department of Law Was Trying to Prevent SOA, DOC From Documenting Facts Surrounding Inmate Deaths and That Many Officers Had Not Received Updated Training in Many Years.**

36.     The 2015 report documented concern about the level of involvement that the Alaska Department of Law exercised in implemented SOA, DOC "policies and operations."

37.     The 2015 DOC Report reviewed inmate suicide cases and instructed DOC policy should change.

38.     The 2015 DOC report concluded that inmates exhibiting suicide risk need to be monitored and on suicide precautions and immediate response is warranted in cases of active suicide.

39.     The 2015 Report documents two inmates that exhibited suicide risk that should have caught the attention of SOA, DOC staff for monitoring and placement on suicide precaution status.

40.     These inmates were not monitored or placed on suicide precautions by SOA, DOC.

41.     The 2015 Report instructed that SOA, DOC revision of suicide policy should be "a clear and compelling priority" and should reflect that inmates exhibiting suicide risk should be monitored and placed on suicide precautions.

42.     The 2015 report documented an inmate serving a parole violation that had reported anxiety and depression.

43.     The inmate was observed trying to hang himself with a shoelace and SOA, DOC officers were immediately alerted.

44.     In Gabby's case, SOA, DOC officers were outside the cell but did not enter the cell for nearly a minute while she hung herself.

45.     The 2015 Report instructed that SOA, DOC policy needs to be changed and "immediate response is warranted in cases of active suicide where there is no conflicting safety or security threat."

46.     The 2015 Report instructed that SOA, DOC needs "to establish a system-wide expectation of zero suicides" and a policy that "any suicide is unacceptable."

47.     The 2015 report interviewed SOA, DOC personnel that explained the Alaska Department of Law "expressed concern that documenting all the facts" surrounding inmate deaths "might make it easier for the state to be found financially liable for the death."

48.     The 2015 report found this to be an overreach of the Alaska Department of Law's relationship with SOA, DOC.

Complaint For Damages                                                                 Page 12 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 12 of 84

49. The 2015 report interviewed correctional officers who explained that the Correctional Officer Academy was referred to as the "academy way" that work was to be done, and this differed from the "real way" work was done in SOA, DOC institutions.

50. The 2015 report documented that many correctional officers had not received updated training courses in many years.

51. The 2015 report recommended that all SOA, DOC policies be updated within six months.

52. The 2015 report recommended that SOA, DOC prioritize the reduction in use of segregated housing.

53. The 2015 report recommended that the Alaska Department of Law not be in a position of acting as "gatekeeper" in the SOA, DOC policy approval process.

54. The 2015 report recommended that SOA, DOC develop "policies and practices" for the proper initial training, and continual assessment and training of all correctional officers.

**E. Despite Ample Notice, SOA, DOC Policies and Practices Fail to Monitor and Fail to Provide Mental Health and Medical Treatment, Resulting In Numerous Inmate Deaths, and Permanent Injuries to Gabrielle Chipps.**

55. On April 4, 2014, inmate Devon Mosely died in his segregation cell after SOA, DOC failed to monitor and failed to provide mental health care and medical care while Mr. Mosely was in his segregation housing.

Complaint For Damages                                                                 Page 13 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 13 of 84

56.     On April 10, 2014, inmate April Kernak died on the floor of her cell following SOA, DOC's failure to monitor and failure to provide medical care to Ms. Kernak in her cell.

57.     On May 14, 2014, inmate Mark Bolus died from a suicide attempt in his segregation cell as a result of SOA, DOC's failure to monitor and failure to provide mental health treatment to Mr. Bolus in his segregation housing.

58.     On June 6, 2014, inmate Kirsten Simon died in her cell due to SOA DOC's failure to monitor and failure to provide medical care to Ms. Simon in her jail cell.

59.     On August 14, 2015, inmate Joseph Murphy died in his cell as a result of SOA, DOC's failure to monitor and failure to provide medical care for Mr. Murphy in his cell.

60.     In January 2016, inmate Kellsie Green died in her segregation cell following SOA, DOC's failure to monitor and failure to provide mental health and medical care to Ms. Green in her cell.

61.     On November 16, 2016, inmate Kristoffer Reuer died after an apparent suicide attempt in segregated housing following SOA, DOC's failure to monitor and to provide mental health and medical treatment for Mr. Reuer in his segregation cell.

62.     In June 2017, inmate Arlo Olson died from a suicide attempt subsequent to SOA, DOC's failure to monitor and failure to provide mental health care to Mr. Olson in his cell.

Complaint For Damages                                                                                    Page 14 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 14 of 84

63.     On August 21, 2017, inmate Antonio Roberson died from a suicide attempt in his segregation cell due to SOA DOC's failure to monitor and failure to provide mental health treatment for Mr. Roberson in his segregation housing.

64.     In August, 2018, inmate Kendall Barrett died from a suicide attempt after SOA, DOC's failure to monitor and provide mental health treatment for Mr. Barrett.

65.     On October 26, 2018, inmate Doran Jennings died of an apparent suicide in segregated housing subsequent to SOA, DOC's failure to monitor and failure to provide mental health treatment for Mr. Jennings in his segregation cell.

## F. Defendants Documented that this Was Gabby Chipps' First Time in Jail and Documented Gabby to Be Under the Influence of Drugs at the Time of Her Arrest.

66.     On January 19, 2020, Gabby was arrested and taken to Homer Jail.

67.     For Gabby's initial booking screen, in answer to the question: "Does the detainee appear to be under the influence of any drug?" Homer Jail staff circled "YES" and wrote in "herion."

68.     For Gabby's initial health screen, in answer to the question: "Does the prisoner appear to be under the influence of barbiturates, heroin, or any other drugs?" Homer Jail staff again circled "YES."

69.     For Gabby's initial health screen, in answer to the question: "Does the prisoner's behavior suggest the risk of assault to staff or to other prisoners?" Homer Jail staff circled "NO."

70.     For Gabby's booking record, in answer to the inquiry for "NAME AND ADDRESS OF EMERGENCY CONTACT" Homer Jail staff documented "Timothy Chipps . . . Father" and included Timothy Chipps' phone number.

71.     Gabby was transferred from Homer Jail to Wildwood Pretrial Facility ("WPT") on January 22, 2020.

72.     At Gabby's initial booking screen at WPT, SOA, DOC medical staff had knowledge of the information from Gabby's initial booking and medical screen from Homer jail, and documented "Homer med screen attached to this file too."

73.     SOA, DOC security staff had knowledge of and possession of Gabby's booking records from the Homer Jail.

74.     At Gabby's initial booking screen at WPT, it was observed and documented by SOA, DOC medical staff that this was Gabby's first time to ever be in jail and that she admitted to using heroin a few weeks prior.

75.     At the time of her booking, SOA, DOC medical staff checked "No" for "Venereal Disease" and "3 weeks ago" for "last menstrual period." Medical staff also referred Gabby to behavioral health for evaluation by a mental health counselor and assigned her to "Detox Cell/Booking" for housing.

### G. Gabby Was Placed on Suicide Precautions Immediately Upon Her Arrival at Wildwood Pretrial Facility and Defendants Failed to Follow SOA, DOC Policies and Procedures on Suicide Assessment, Prevention, and Ongoing Suicide Evaluation.

76.     On January 22, 2020, Gabby was placed on "Suicide Precautions" which included that she be given "No Sharps or Razors." *See* Exhibit 1.

77.     Exhibit 1 attached is the DOC individual determination form for Gabrielle Chipps.  The form clearly identifies suicide precautions of "No Sharps or Razors."

78.     On Exhibit 1, the "Date Initiated" is "1/22/20" which was entered by Sergeant James Lovell and the "Staff Initials" next to "No Sharps or Razors" are Sergeant James Lovell's initials.

79.     On March 8, 2022, State of Alaska, Department of Corrections identified for the first time that Sergeant James Lovell dated and initialed the "No Sharps or Razors" attached as Exhibit 1.

80.     Sergeant James Lovell identified suicide precautions of "no Sharps or Razors" for Gabby on 1/22/20.

81.     On 1/22/2020, Sergeant James Lovell knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

82.     Sergeant James Lovell knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

Complaint For Damages                                                         Page 17 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 17 of 84

83. Sergeant James Lovell identified Gabby as being at risk for suicide on 1/22/20.

84. On 1/22/2020, Sergeant James Lovell knew Gabby was at risk for suicide.

85. Sergeant James Lovell knew Gabby was at risk for suicide while in SOA, DOC custody and care.

86. Sergeant James Lovell notified Superintendent Shannon McCloud of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

87. On 1/22/2020, Superintendent Shannon McCloud knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

88. Superintendent Shannon McCloud knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

89. Sergeant James Lovell notified Superintendent Shannon McCloud that Gabby is at risk for suicide on 1/22/20.

90. On 1/22/2020, Superintendent Shannon McCloud knew Gabby was at risk for suicide.

91. Superintendent Shannon McCloud knew Gabby was at risk for suicide while in SOA, DOC custody and care.

92. Sergeant James Lovell notified Superintendent James Milburn of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

93. On 1/22/2020, Superintendent James Milburn knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

Complaint For Damages                                                                                          Page 18 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 18 of 84

94.    Superintendent James Milburn knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

95.    Sergeant James Lovell notified Superintendent James Milburn that Gabby is at risk for suicide on 1/22/20.

96.    On 1/22/2020, Superintendent James Milburn knew Gabby was at risk for suicide.

97.    Superintendent James Milburn knew Gabby was at risk for suicide while in SOA, DOC custody and care.

98.    Sergeant James Lovell notified Sergeant Gerad Siamani of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

99.    On 1/22/2020, Sergeant Gerad Siamani knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

100.    Sergeant Gerad Siamani knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

101.    Sergeant James Lovell notified Sergeant Gerad Siamani that Gabby is at risk for suicide on 1/22/20.

102.    On 1/22/2020, Sergeant Gerad Siamani knew Gabby was at risk for suicide.

103.    Sergeant Gerad Siamani knew Gabby was at risk for suicide while in SOA, DOC custody and care.

104.    Sergeant James Lovell notified Mental Health Clinician Beth Selby of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

105.     On 1/22/2020, Mental Health Clinician Beth Selby knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

106.     Mental Health Clinician Beth Selby knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

107.     Sergeant James Lovell notified Mental Health Clinician Beth Selby that Gabby is at risk for suicide on 1/22/20.

108.     On 1/22/2020, Mental Health Clinician Beth Selby knew Gabby was at risk for suicide.

109.     Mental Health Clinician Beth Selby knew Gabby was at risk for suicide while in SOA, DOC custody and care.

110.     Sergeant James Lovell notified Psychiatrist Dwight Stallman of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

111.     On 1/22/2020, Psychiatrist Dwight Stallman knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

112.     Psychiatrist Dwight Stallman knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

113.     Sergeant James Lovell notified Psychiatrist Dwight Stallman that Gabby is at risk for suicide on 1/22/20.

114.     On 1/22/2020, Psychiatrist Dwight Stallman knew Gabby was at risk for suicide.

115.    Psychiatrist Dwight Stallman knew Gabby was at risk for suicide while in SOA, DOC custody and care.

116.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, and Dwight Stallman, Sergeant James Lovell notified other SOA, DOC employees of suicide precautions initiated for Gabby of "No Sharps or Razors" on 1/22/20.

117.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, Dwight Stallman, and James Lovell, on 1/22/2020, other SOA, DOC employees knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

118.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, Dwight Stallman, and James Lovell, other SOA, DOC employees knew Gabby was not to be given sharps or razors while in SOA, DOC custody and care.

119.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, and Dwight Stallman, Sergeant James Lovell notified other SOA, DOC employees that Gabby is at risk for suicide on 1/22/20.

120.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, Dwight Stallman, and James Lovell, on 1/22/2020, other SOA, DOC employees knew Gabby was at risk for suicide.

121.    Besides Shannon McCloud, James Milburn, Gerad Siamani, Beth Selby, Dwight Stallman, and James Lovell, other SOA, DOC employees knew Gabby was at risk for suicide while in SOA, DOC custody and care.

122.    At the bottom of the page on Exhibit 1 is Superintendent Milburn's signature.

123. When Superintendent Milburn signed Exhibit 1, he was aware that Gabby was to receive "No Sharps or Razors" while at Wildwood Pretrial Facility.

124. On 1/22/20, Superintendent Milburn was aware that "No Sharps or Razors" were to be given to Gabby while she was at Wildwood Pretrial.

125. Gabby's SOA, DOC institutional file and Segregation Logs indicate Gabby received razors on several days while she was at Wildwood Pretrial Facility.

126. SOA, DOC employees provided Gabby with razors while she was at Wildwood Pretrial Facility.

127. SOA, DOC Policy 807.20, Section IIB, dated September 6, 2019, states in pertinent part: "Any employee who identifies a prisoner as being at risk for suicide shall follow the procedures outlined in section III below, to ensure the safety of the prisoner."

128. Section III of the September 6, 2020 Suicide Precautions policy 807.20, states in relevant part:

III. Initiation of Suicide Prevention Status:
When a prisoner is identified as being at risk for suicide, the prisoner shall be placed on suicide prevention status and staff shall:

A. Not leave the prisoner unattended;

B. Secure the environment and remove any items that may be used to inflict harm;

    1. Immediate removal of items may be delayed in circumstances where the prisoner is non-compliant, but is not actively engaged in suicidal or self-harming behaviors and is in constant observation of staff;

C. Notify the Superintendent or designee of the prisoner's suicidal behaviors or ideations;

D. Notify the mental health staff or if they are unavailable, the health care department;

Complaint For Damages                                                                Page 22 of 84
Chipps, et al. vs. Lovell, James

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 22 of 84

E. Ensure the prisoner is housed in a suicide prevention cell on the appropriate suicide prevention status. If a suicide prevention cell is not available, the prisoner shall be housed in a safe location designated by the Superintendent;

F. Ensure that a Suicide Prevention Status Orders-Placement (Attachment A) is completed and routed to designated staff; and

G. Observe the prisoner based on the order documented on the Suicide Prevention Status Orders – Placement (Attachment A).

129.     Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel did not leave Gabby unattended.

130.     Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was left unattended on a regular basis.

131.     Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel kept Gabby under constant observation and failed to document in writing that SOA, DOC personnel removed items Gabby could use to inflict self-harm.

132.     Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not kept under constant observation and Gabby was allowed to keep items Gabby could use to inflict self-harm.

133.     Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel housed Gabby in a safe and appropriate suicide prevention cell.

Complaint For Damages                                                      Page 23 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 23 of 84

134. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not housed in a safe and appropriate suicide prevention cell.

135. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete a written Suicide Prevention Status Orders-Placement, attached as Exhibit 2 and document and distribute the written Suicide Prevention Status Orders-Placement to all SOA, DOC designated staff. *See* Exhibit 2.

136. Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that it observed Gabby based on the "order documented on the Suicide Prevention Status Orders—Placement." Exhibit 2.

137. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not properly assessed or evaluated to ensure her safety.

138. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not properly observed and monitored to ensure her safety.

139. Section IV of the September 6, 2020 Suicide Precautions policy 807.20, states in pertinent part:

VI. Evaluation:

All prisoners identified as at risk of self-injury, suicide or injury to others shall be evaluated by the mental health staff or designee within 24 hours to determine the degree of risk, level of supervision needed, treatment, and to determine if the prisoner's suicide risk is associated with symptoms of mental illness, substance use or situational. The SAFE-T assessment protocol shall be used in the evaluation:

A. While on suicide prevention status, mental health staff shall meet with the prisoner every work day to reassess the prisoner's suicide risk using the SAFE-T assessment protocol on the SAFE-T form (Attachment C).

B. If mental health staff are unavailable, a member of the nursing staff shall use the SAFE-T form (Attachment C) and call the on-call provider for consultation.

C. If a prisoner is actively engaging in self-harm, mental health staff may authorize the use of therapeutic restraints as outlined in DOC P&P 1207.02 (Therapeutic Restraint and Seclusion). Staff shall notify the Superintendent or designee of any use of restraints.

D. It is the mental health staff or designee responsibility to communicate the prisoner's suicide prevention plan to all employees responsible for the safety of the prisoner.

E. Any suicidal prisoner who cannot be safely managed at the institution shall be considered for transfer to another institution which can provide the additional mental health services needed by the prisoner. This determination shall be made by the Superintendent in conjunction with mental health staff. If a transfer cannot occur, the reasons shall be documented by the Superintendent or mental health staff.

140. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete a written SAFE-T form attached as Exhibit 3, as required by its policies and procedures, to determine Gabby's "degree of risk, level of supervision needed, treatment," and whether Gabby's "suicide risk is associated with symptoms of mental illness, substance use, or situational." Exhibit 3.

141. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel met with Gabby every work day to reassess Gabby's risk by completing a written SAFE-T form. Exhibit 3.

Complaint For Damages
*Chipps, et al. vs. Lovell, James*

Page 25 of 84

142.    Despite Gabby being placed on suicide precautions on January 22, 2020, there is no documentation of a written suicide prevention plan for Gabby attached as Exhibit 6.

143.    Despite Gabby being placed on suicide precautions on January 22, 2020, there is no documentation or dissemination of a written suicide prevention plan attached as Exhibit 6 to all SOA, DOC employees responsible for Gabby's safety.

144.    Despite Gabby being placed on Suicide precautions on January 22, 2020, there is no documentation and no evaluation in writing of the need to transfer Gabby to another institution to provide mental health services or document the reasons why a transfer cannot occur.

## H. Immediately Upon Arriving at Wildwood Pretrial Facility, Defendants Observed Gabby Experiencing a Serious Mental Health Breakdown.

145.    On January 19, 2020, for Gabby's initial health screen, in answer to the question: "Does the prisoner's behavior suggest the risk of assault to staff or to other prisoners?" Homer Jail staff circled "NO."

146.    On January 24, 2020, two days after Gabby's arrival at Wildwood Pretrial Facility, SOA, DOC Mental Health Clinician Beth Selby evaluated Gabby and noted that she was "marginally cooperative" and would only give "yes" or "no" answers to questions, but documented that "Security reports she has been cooperative." Mental Health Clinician Selby cleared Gabby for housing.

147. The very next morning, on January 25, 2020 at 0900 hours, SOA, DOC personnel observed a very serious deterioration of Gabby's mental health.

148. On January 25, 2020, Gabby was observed by SOA, DOC security and medical staff experiencing a serious mental breakdown, and harming herself.

149. At 0900 on January 25, 2020, Gabby was observed verbally threatening SOA, DOC security staff, punching the door, window, and wall of her cell, and attempting to break the toilet in her cell.

150. SOA, DOC security officer Lawrence asked Gabby if she wanted to kill or harm herself to which Gabby reportedly replied "I'd like to kill you Lawrence."

151.  Gabby was observed harming herself by SOA, DOC security and medical staff, blood was observed on her right hand, and blood stains were observed on her clothing from her punching the door, window, and wall of her cell.

152. SOA, DOC security Staff Sargent Gerad Siamani was called to the scene by security officer Hardesty.

153. Siamani directed Gabby to lay face down flat on the floor, but Gabby refused and stated she would attack anyone that tried to enter her cell.

154. Siamani asked Gabby if she was physically ok, but Gabby would not reply.

155. On Siamini's orders, security staff then deployed OC spray into Gabby's cell to gain her compliance to security staff orders and to prevent her from further harming herself.

156.    Gabby became aggressive again on her way to booking and had to be carried by security staff officers to her holding cell.

157.    Gabby received medical treatment for the wounds to her hand caused by her self-harming behavior.

158.    A copy of the video recording of the incident was placed into evidence by SOA, DOC security staff.

159.    On January 25, 2020, Staff Sargent Gerad Siamani signed Gabby's Administrative Segregation Admission form.

160.    On January 25, 2020, Superintendent Shannon McCloud signed Gabrielle's individual determination for segregation, and Gabrielle was placed in administrative segregation.

**I.    Despite Gabby Being On Suicide Precautions and Experiencing a Serious Mental Breakdown, Defendants Continually Failed to Follow SOA, DOC Policies.**

161.    Section VII of the Suicide Prevention policy, 807.20, states as follows:

VII.  Housing:
       Any prisoner determined to be at increased risk of self-injury or suicide shall be housed in a suicide prevention cell. Employees shall respect and ensure the safety and well-being of prisoners when on suicide prevention status:

A. Each institution shall designate a suicide resistant cell(s) or areas that ensure:

   1. A clear and unobstructed view of the prisoner at all times. Windows shall not be covered;

   2. Staff interaction with the prisoner; and

   3. Quick intervention should the prisoner engage in self-injurious behaviors.

B. Prior to the prisoner being placed in the suicide prevention cell or area, a thorough search of the prisoner and cell shall be conducted per DOC P&P 1208.08 (Searches of Prisoners and Institutional Areas). All items, devices, and materials the prisoner could use to engage in self-injurious behavior shall be removed.

C. Prisoners shall only be given items specified on the Suicide Prevention Status Orders – Placement (Attachment A). Property restrictions may only be used to ensure safety of the prisoner and may not be used as a punitive measure.

D. Under emergency conditions, a prisoner considered at risk of self-injury or suicide may be placed in an alternate cell / location until a designated suicide resistant cell is available. The prisoner must be moved to a designated suicide prevention cell as soon as possible.

E. Prisoners on suicide precautions may be housed with other prisoners on suicide precautions, based upon the recommendations of the mental health staff or designee.

     162.    Despite Gabby being placed on suicide precautions on January 22, 2020, no one documented in writing that Gabby shall be housed in a suicide prevention cell.

     163.    Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not housed in a suicide prevention cell.

     164.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel shall maintain a clear and unobstructed view of Gabby at all times.

     165.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to maintain a clear and unobstructed view of Gabby at all times.

Complaint For Damages
*Chipps, et al. vs. Lovell, James*

Page 29 of 84

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 29 of 84

166.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel shall maintain appropriate staff interaction with Gabby.

167.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to maintain appropriate staff interaction with Gabby.

168.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that Gabby shall be placed in a cell that ensures quick intervention should Gabby engaged in self-injurious behaviors.

169.    Despite Gabby being placed on  suicide precautions on January 22, 2020, Gabby was not placed in a cell that ensures quick intervention should Gabby engage in self-injurious behaviors.

170.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing a search of Gabby's segregation cell and failed to document in writing all items and areas that could be used for self-harm.

171.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to conduct a search of Gabby's segregation cell to determine all items and areas that could be used for self-harm.

172.    Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete in writing any Suicide Prevention Status Orders attached as Exhibit 2 for Gabby.  Exhibit 2.

Complaint For Damages                                                                          Page 30 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 30 of 84

173.    Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was placed in an isolated and unmonitored cell as a disciplinary measure.

174.    Despite Gabby being placed on suicide precautions on January 22, 2020, a punitive measure was inflicted on Gabby by placing her in an isolated and unmonitored cell.

**J.  Defendants Aggravated Gabby's Mental Health Breakdown By Approving her for Administrative Segregation, and by Requesting STD Screen Despite Gabby Reporting No STDs at Booking.**

175.    On January 26, 2020, despite Gabby reporting no venereal disease at initial booking, nor requesting a sexually transmitted disease screen, SOA, DOC medical staff requested a urine sample from Gabby for a sexually transmitted disease testing.

176.    SOA, DOC staff documented that Gabby became agitated and stated she was not doing sexually transmitted disease testing and she didn't ask for sexually transmitted disease testing.

177.    On January 27, 2020, Superintendent McCloud approved Gabby's Administrative Segregation Admission form, attached as Exhibit 4, based on the January 25 incident.  Exhibit 4.

178.    Superintendent McCloud's approval was in violation of national standards and protocols as well as SOA, DOC Suicide Prevention Policy 807.20.

Complaint For Damages                                                                 Page 31 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 31 of 84

**K. Gabby Suffered Another Serious Mental Breakdown, and Officer Siamani and Superintendent Milburn Continued to Violate SOA, DOC Policy.**

179.    On January 28, 2020, Defendants observed Gabby suffering another serious mental breakdown.

180.    At approximately 0900 on January 28, 2020, SOA, DOC male correctional officer Hardesty observed Gabby banging on her cell door and speaking inaudibly.

181.    Control released Gabby's cell door, and she came out of her cell and grabbed male officer Hardesty around his shoulder and chest area and attempted to push him.

182.    Officer Hardesty attempted to bring Gabby to the ground, and she grabbed the handrail in resistance.

183.    Officer Hardesty radioed for back-up assistance and managed to successfully take Gabby to the ground.

184.    Assisted by three other SOA, DOC security officers, including Staff Sargent Gerard Siamani, Gabby was placed in restraints and escorted to booking.

185.    Gabrielle was then placed in two-man full restraints and placed in administrative segregation housing.

186.    A copy of the video surveillance recording the incident was placed into evidence by SOA, DOC.

187.    On January 28, 2020, Gabby refused to sign the Initial Classification/Designation Form.

188.	On January 28, 2020, Staff Sargent Gerad Siamani signed Gabby's Administrative Segregation Admission form in violation of national standards and protocols as well as SOA, DOC Suicide Prevention Policy 807.20.

189.	On January 28, 2020, Assistant Superintendent Milburn approved Gabby's Administrative Segregation Admission form in violation of national protocols and SOA, DOC policies and procedures.

190.	On January 28, 2020, SOA, DOC Assistant Superintendent James Milburn approved Gabrielle's Individual Determination for segregation in violation of SOA, DOC policies and procedures.

191.	On January 29, 2020, SOA, DOC employee K. Ballie PO II observed Gabby as "Mentally Unsound" as documented in the notice of classification hearing paperwork being reviewed with Gabby.

## L. Defendants Knew Gabby Received a "Time Served" Offer from the Kenai District Attorney's Office.

192.	On January 30, 2020, Gabby's attorney, Hannah Etengoff, went to Wildwood Pretrial Facility ("WPT") to talk with Gabby about a "time served" offer from the Kenia District Attorney's office.

193.	The offer also required, among other things, that Gabby complete mental health and substance abuse evaluations, and follow all recommendations, with quarterly compliance reports to go to the district attorney's office as to Gabby following these recommendations. *See* Exhibit 5.

Complaint For Damages	Page 33 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 33 of 84

194. There were mental health treatment programs and substance abuse treatment programs at the time located in Kenai, Soldotna, Ninilchik, and Homer that would have been able to provide Gabby with treatment based on any mental health and substance abuse evaluations and recommendations.

195. In Attorney Etengoff's experience, people generally do well in treatment and recovery for their mental health and substance abuse issues when their treatment is monitored through the district attorney's office. There is significantly less recidivism for people as well when their treatment is monitored through the district attorney's office.

**M. Defendants Knew Gabby Was Having a Mental Health Breakdown**

196. When Attorney Etengoff arrived at WPT to see Gabrielle, the SOA, DOC corrections officer on duty said to Attorney Etengoff "Do you *know* Ms. Chipps? Well Ms. Chipps doesn't follow the rules".

197. The way the corrections officer spoke to Attorney Etengoff about Gabby, it was implied that Defendants knew Gabby was having some kind of mental breakdown.

198. Attorney Etengoff told the officer on duty that she had a "time served" offer for Gabby, and wanted to talk with Gabby about the "time served" offer.

199. The officer told Attorney Etengoff that Gabby refused to see her.

200. Attorney Etengoff asked the officer to escort her back to see Gabby so Attorney Etengoff could show Gabby her face and talk to her about the time served offer.

201. In the past when Attorney Etengoff has made this request, if she is told a client is refusing to see her and she strongly suspects the client is having a mental health

problem, correctional officers have escorted her back so she could talk with her client face to face.

## N. Defendants Refused to Allow Gabby's Attorney to Speak with Gabby About the "Time Served" Offer.

202.    This time, despite Attorney Etengoff telling the officer she had a "time served" offer to discuss with Gabby, when Attorney Etengoff requested to see Gabby, the officer refused and said "No we can't do that."

203.    When it was clear the officer would not take Attorney Etengoff to see Gabby, Attorney Etengoff told him she had a time served offer for Gabby and handed him the offer and her business card and asked him to give them to Gabby.

204.    The offer was only one page, and the words "Time to serve: 31 days" were plainly visible in the middle of the page and could easily be seen by anyone holding the one page offer.  Exhibit 5.

205.    The officer took the offer and business card from Attorney Etengoff and told her he would give both to Gabby.

206.    The Public Defender Agency had mailed Gabby paperwork to be signed.

207.    Attorney Etengoff was informed by the officer that Gabby signed the paperwork, then ripped it up and threw it back at him.

208.    The WPT officers would usually mention to Attorney Etengoff if her client was in segregation, but the officer didn't mention that Gabby was in segregation.

Complaint For Damages
*Chipps, et al. vs. Lovell, James*
Page 35 of 84

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 35 of 84

209.    WPT did not allow Attorney Etengoff to see or speak to Gabby at WPT on January 30, 2020.

210.    When Attorney Etengoff arrived at court on January 30, 2020 for Gabby's court hearing, she was informed that Gabby refused to be transported from WPT to court.

**O. Defendants Failed to Follow SOA, DOC Policies and National Standards; Gabby Continued to Show Serious Mental Health Breakdown and Mental Health Clinician Selby Violated SOA, DOC Policies in Evaluating Gabby.**

211.    On January 30, 2020, SOA, DOC Mental Health Clinician Beth Selby conducted Gabby's initial mental health assessment for segregated housing in violation of SOA, DOC policies and procedures.

212.    Despite Gabby being placed on Suicide Precautions since January 22, 2020, and despite Gabby's very recent and serious mental health breakdowns and Gabby demonstrating serious mental health decline, Counselor Selby failed to document and complete in writing the SOA, DOC SAFE-T form attached as Exhibit 3.

213.    Despite Gabby being placed on Suicide Precautions since January 22, 2020, and despite Gabby's very recent and serious mental health breakdowns and Gabby demonstrating serious mental health decline, Counselor Selby failed to follow relevant SOA, DOC Suicide Prevention 807.20 Policies and Procedures.

214.    During the January 30, 2020 assessment, Counselor Selby documented "Yes" for "Conflict with staff and/or offenders" and further documented that Gabby was "placed in seg on 2 man full restraint for assaulting on an officer. She [Gabby] also told another officer she wanted to kill her."

215.  Selby documented Gabby's "Attitude" as "Withdrawn" and "Guarded."

216.  Selby documented "No" for "Speech appropriate to situation" and further documented speech was "slow" and "monotone."

217.  Selby documented "No" for "Affect appropriate to situation" and further documented affect as "flat."

218.  For "Thought process logical and goal directed" Selby documented "Would only answer questions with "yes" or "no."

219.  Selby documented "No" for "Insight and judgment appropriate to situation" and further documented "impulsive."

220.  Selby documented that Gabby "denies any MH problems.  Current presentation could be related to drugs but she won't answer enough questions to determine this or if she has MH problems."

221.  Selby documented "Yes" for "Any observed mental health symptoms?" and further documented that Gabby "Needs further eval. Guarded, flat affect, bx problems."

222.  Selby's documented "Plan" was to "Continue [segregated] housing per security."

223.  Selby persisted in this "Plan" for Gabby, contrary to being on notice more than 10 years ago that this violates SOA, DOC policy and national standards unless SOA, DOC provides continual monitoring and appropriate evaluation and treatment for Gabby pursuant to policy 807.20.

Complaint For Damages                                                          Page 37 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 37 of 84

224. Section VIII of the Suicide Precaution policy 807.20 states in relevant

VIII. Treatment:

A safety plan shall be developed by mental health staff or designee for all prisoners at risk of self-injury and suicide. The treatment plan shall be based on the SAFE-T assessment protocol:

A. The mental health staff shall address the underlying reason for the suicidal behaviors or ideations. The mental health staff shall develop an initial safety plan using the Suicide Prevention Safety Plan (Attachment D) to address the suicide risk which shall incorporate identifying protective factors, future goals, and support system.

B. The mental health staff shall develop a treatment plan to include monitoring strategies to prevent future relapse. This treatment plan shall be documented in the prisoner's medical record.

C. The mental health staff or designee shall document any condition which indicates a need to change the suicide prevention status. Changing the suicide prevention status includes:

1. Moving to a higher suicide prevention status;

2. Gradual removal of suicide prevention status; or

3. Discharge / release from suicide prevention status.

D. Discontinuation of suicide prevention status shall be determined only by mental health staff or their designee in consultation with mental health staff and documented using the Suicide Prevention Status Orders-Removal (Attachment B).

225. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document a written Suicide Prevention Safety Plan, attached as Exhibit 6 for Gabby.

226. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing the underlying reasons for Gabby's suicidal risk.

Complaint For Damages                                                                    Page 38 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 38 of 84

227.     Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing an initial safety plan for Gabby using the Suicide Prevention Safety Plan attached as Exhibit 6 to address Gabby's suicide risk by incorporating "identifying protective factors, future goals, and support system."  Exhibit 6.

228.     Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document a written treatment plan that includes monitoring strategies to prevent future relapse.

229.     Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing any conditions indicating a need to change Gabby's suicide prevention status.

## P. Superintendents McCloud and Milburn Continued to Violate SOA, DOC Policies.

230.     On January 31, 2020, Assistant Superintendent James Milburn approved Gabby's Administrative Segregation Hearing Form based on the January 28 incident, in violation of SOA, DOC policies and procedures.

231.     On February 2, 2020, Gabby submitted a Request for Interview Form to Superintendent James Milburn asking when she will get out of segregated housing.

Complaint For Damages                                              Page 39 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 39 of 84

232.    Superintendent Shannon McCloud responded to Gabby's February 2 request, stating "When you stop attacking staff" in violation of SOA, DOC policies and procedures.

233.    On February 3, 2020, SOA, DOC personnel documented that Gabby "refused" to receive a copy of her Administrative Segregation Hearing Form.

## Q. Gabby's Mental Health Continued to Seriously Deteriorate; Gabby was Diagnosed with Depression While in Segregation Housing.

234.    On February 5, 2020, SOA, DOC Forensic Psychiatrist Dwight Stallman documented that Gabby "complains of depression for days to weeks", diagnosed "Depressive Disorder NOS" and prescribed Celexa, 20 milligrams daily.

235.    The SOA, DOC video evidence demonstrates Psychiatrist Stallman spent less than four minutes in his office with Gabby before making this diagnosis.

236.    Psychiatrist Stallman knew Gabby was on suicide precautions at this time. See Exhibit 1 (Form 804.01E).

237.    Psychiatrist Stallman knew that in 2010, SOA, DOC policy violated NCCHC standards by failing to require that inmates on suicide precautions are continually monitored while on suicide precautions in segregated housing.

238.    Psychiatrist Stallman knew the 2015 DOC Report instructed that SOA, DOC revision of suicide policy should be "a clear and compelling priority" and should reflect that inmates exhibiting suicide risk should be monitored and placed on suicide precautions.

239.    Psychiatrist Stallman knew Gabby was 21 years old and this was Gabby's first time in jail.

Complaint For Damages                                                                 Page 40 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 40 of 84

240. Psychiatrist Stallman knew Gabby appeared to be on heroin when she was booked on 1/19/20.

241. Psychiatrist Stallman knew Gabby had a mental breakdown on 1/25//2020 and another mental breakdown on 1/28/2020.

242. Psychiatrist Stallman did not order continual monitoring of Gabby after diagnosing her with depression.

243. Psychiatrist Stallman did not order that Gabby be placed on suicide precautions after diagnosing her with depression.

244. Psychiatrist Stallman's failure to order continual monitoring of Gabby violated SOA, DOC suicide policies.

245. Psychiatrist Stallman's failure to place Gabby on suicide precautions violated SOA, DOC suicide policies.

246. SOA, DOC Mental Health Counselor Selby conducted a segregated housing assessment on February 5, 2020. For "Conflict with staff and/or offenders?" Selby documented "Yes" and further documented "In seg for assault on an officer. Also told another officer she wanted to kill her. 2 man status."

247. For "Problems reported by patient" Selby documented "Yes" and further documented "Depression reported. Wants out of seg."

248. For "Speech appropriate to situation" Selby documented "Slow/monotone. Short/vague answers to questions."

Complaint For Damages                                                         Page 41 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 41 of 84

249. For "Mood appropriate to situation" Selby documented "No" and further documented "irritable."

250. For "Affect appropriate to situation" Selby documented "No" and further documented "smirk on her face during assessment."

251. For "Insight and judgment appropriate to situation" Selby documented "No" and further documented "Bx problems, anger, doesn't take responsibility for why she's in seg. Claims to not remember what she did to get in seg."

252. For "Does the patient report current homicidal ideation (If yes, follow Policy and Procedure)" Selby documented "Yes" and further documented "When asked if she was having thoughts of harm to others, she smirked and replied sarcastically 'Of course not.'"

253. For "Is the Patient currently on the Behavioral Health Caseload" Selby documented "Yes" and further documented "Seen at clinic today. Meds ordered."

254. For "Any observed mental health symptoms" Selby documented "Yes" and further documented "IM appears to be mostly antisocial. Likely attention seeking bxs."

255. Regardless of Defendants' perception of Gabby's underlying reasons for suicide risk, for example, genuine distress versus manipulation, Defendants are required to follow national standards and protocols, and DOC, SOA Suicide Prevention policies and procedures regarding Gabby's safety.

256. For "Plan" Selby documented "Continue [segregated] housing per security" while Gabby is on Suicide Precautions, contrary to SOA, DOC policy, and contrary to being on notice more than 10 years ago that this violates national standards unless

Complaint For Damages                                                                              Page 42 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 42 of 84

Defendants provide constant monitoring, appropriate assessment, evaluation, and treatment for of Gabby pursuant to SOA, DOC policies and procedures.

**R. Defendants Aggravated Gabby's Mental Health Condition By Sentencing Her to 54 Days Punitive Segregation Knowing She Had Received a "Time Served" Offer, Then Failed to Continually Monitor Gabby in her Segregation Housing Contrary to SOA, DOC Policies and National Standards.**

257.    On February 5, 2020, Gabby said she did not remember punching the wall of her cell, trying to break the toilet, or saying she wanted to kill Officer Lawrence, but was found guilty of these charges and sentenced to 14 days punitive segregation despite Defendants having knowledge that Gabby had received a "time served" offer through Attorney Etengoff.

258.    On February 5, 2020, Gabby admitted to the infraction of assaulting a staff member, found guilty, and sentenced to 40 days punitive segregation despite Defendants having knowledge that Gabby had received a "time served" offer through Attorney Etengoff.

259.    On February 6, 2020, SOA, DOC medical staff attempted to obtain a urine sample from Gabby.  Medical staff did not explain to Gabby why a urine sample was being requested.  Gabby provided a urine cup filled with what medical staff reported "looks like tap water."

260.    On February 7, 2020, Gabby was advised that a pregnancy test was needed before she could receive the Celexa medication prescribed for her depression on February

Complaint For Damages                                                                                    Page 43 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 43 of 84

5.  Gabby refused a urine pregnancy screen and SOA, DOC behavioral health was notified through tagging the note.

261.    There was no response to Gabby by SOA, DOC behavioral health based on the February 7, 2020 tagged note.

262.    Gabby was not receiving her Celexa medication prescribed by Defendants to her for depression, and Defendants failed to monitor her in her segregation cell in violation of national standards and SOA, DOC policies and procedures.

**S.  In Addition to being placed on Suicide Precautions, and having a Serious Mental Breakdown, National Standards Recognized Gabby to be at High Risk of Suicide.**

263.    In addition to other individual high-risk factors for suicide, the national Commission on Correctional Health Care and other national standards and protocols recognize the time period upon admission to jail to be a high risk period for suicide.

264.    On February 8, 2020, Gabby had been in jail, for the first time, for less than three weeks.

265.    In addition to other individual high-risk factors for suicide, the National Commission on Correctional Health Care and other national standards and protocols recognize the time period following institutional proceedings for punitive segregation to be a high risk period for suicide.

266.    On February 5, 2020, Gabby was sentenced to 54 days punitive segregation.

267.    In addition to other individual high-risk factors for suicide, the National Commission on Correctional Health Care and other national standards and protocols

recognize the time period after an inmate is placed in segregated housing to be a high risk period for suicide.

268.    SOA, DOC placed Gabby in segregation housing on January 25, 2020, and on January 28, 2020 through February 8, 2020.

**T. Gabby Attempted Suicide, Diagnosed with Anoxic Brain Injury.**

269.    On February 8, 2020 at approximately 6 p.m., SOA, DOC Corrections Officer Allie White found Gabby "hanging by her neck from the window with a bedsheet." Exhibit 7.

270.    Officer A. White requested assistance because Gabby was hanging by her neck in her cell and also requested the 911 sheet cut down knife.

271.    Officer A. White, Officer Siamani, Officer Barlow, Nurse Ambrosia, Officer Sprenger and Officer Mindy Lawrence knew that prevention of suicide should be "a clear and compelling priority."

272.    Officer A. White Officer Siamani, Officer Barlow, Nurse Ambrosia, Officer Sprenger and Officer Mindy Lawrence knew that "immediate response is warranted in cases of active suicide where there is no conflicting safety or security threat."

273.    Officer A. White did not immediately enter Gabby's cell 311 to administer emergency aid to Gabby.

274.    Officer A. White watched Gabby "hanging by her neck from the window with a bedsheet" for more than 50 seconds before entering Gabby's cell.

Complaint For Damages                                                                Page 45 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 45 of 84

275.  Watching Gabby "hanging by her neck from the window with a bedsheet" for more than 50 seconds before entering Gabby's cell violates SOA, DOC Emergency Procedures and established Emergency Plans.

276.  Officer Siamani, Officer Stephen Barlow, Nurse Ambrosia and Officer Matthew Sprenger and Officer Mindy Lawrence heard Officer A. White's request for assistance that Gabby was hanging by her neck in her cell and for the 911 sheet cut down knife.

277.  Officer Siamani, Officer Barlow, Nurse Ambrosia and Officer Sprenger responded to Officer A. White's request, but failed to bring the AED, medical equipment and oxygen.

278.  The failure to bring the AED, medical equipment and oxygen by Officer Siamani, Officer Barlow, Nurse Ambrosia and Officer Sprenger violates SOA, DOC Emergency Procedures and established Emergency Plans.

279.  Officer Barlow, Officer A. White and Nurse Ambrosia had to leave Gabby's cell to go get the AED, medical equipment and oxygen and bring it back to Gabby's cell.

280.  Gabby was "hanging by her neck from the window with a bedsheet" for more than a minute after being found by Officer A. White before Gabby was cut down.

281.  That Gabby was "hanging by her neck from the window with a bedsheet" for more than a minute after being found by Officer A. White before being cut down violates SOA, DOC Emergency Procedures and established Emergency Plans.

282. After cutting her down, Officer A. White, Officer Siamani, Officer Barlow, Nurse Ambrosia and Officer Sprenger found Gabby was not breathing and had no pulse.

283. Officer A. White, Officer Siamani, Officer Barlow, Nurse Ambrosia and Officer Sprenger did not begin cardiopulmonary resuscitation for more than 3 minutes and 40 seconds after finding Gabby "hanging by her neck from the window with a bedsheet."

284. That Officer A. White, Officer Siamani, Officer Barlow, Nurse Ambrosia and Officer Sprenger did not begin cardiopulmonary resuscitation for more than 3 minutes and 40 seconds after finding Gabby "hanging by her neck from the window with a bedsheet" violates SOA, DOC Emergency Procedures and established Emergency Plans.

285. Officer Lawrence waited more than 5 minutes and 40 seconds after hearing Officer A. White's request for assistance that Gabby was hanging by her neck in her cell and for the 911 sheet cut down knife before calling Emergency 911.

286. That Officer Lawrence waited more than 5 minutes and 40 seconds after hearing Officer A. White's request for assistance that Gabby was hanging by her neck in her cell and for the 911 sheet cut down knife before calling Emergency 911 violates SOA, DOC Emergency Procedures and established Emergency Plans.

287. Upon arrival of emergency medical service, Gabby's care was turned over to Nikiski Fire Department personnel, who achieved return of spontaneous circulation.

288. Nikiski Fire Department transported Gabby to the Emergency Department at Central Peninsula Hospital.

Complaint For Damages                                                                 Page 47 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 47 of 84

289.     Upon Gabby's arrival at Central Peninsula Hospital, tests confirmed Gabby was not under the influence of any drug, and Gabby was not pregnant.

290.     Upon arrival at Central Peninsula, it was also confirmed that Gabby did not have a sexually transmitted disease.

291.     Upon Gabby's admission to Central Peninsula Hospital, she was diagnosed with, among other injuries, anoxic brain injury.

292.     Based on the February 8, 2020 incident, and her diagnosis of anoxic brain injury, Gabby was unable to make any decisions regarding her medical care.

**U.  As a Disciplinary Measure, Gabby Was Left Unmonitored in an Isolated Cell in Violation of SOA, DOC Policy and Federal Standards; Defendants Failed to Notify Gabby's Family in Violation of SOA, DOC Policies.**

293.     Upon Gabby's admission to Central Peninsula Hospital, hospital doctors had no medical records for Gabby to know the names of family and next of kin.

294.     Central Peninsula Hospital doctors had a number of discussions with SOA, DOC personnel regarding this lack of information and the need to notify Gabby's family members and next of kin.

295.     Defendants had discussions about this, and reported to Central Peninsula Hospital doctors that Defendants will release information to Gabby's family members and next of kin, when required by SOA, DOC policies.

296.     Defendants did not notify Gabby's family members, Timothy and Holly Chipps about the incident.

Complaint For Damages                                                                                          Page 48 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 48 of 84

297.    The Alaska State Trooper, at approximately 11p.m. on February 8, 2020, left a voice message for the Chipps more than five hours after the incident happened.

298.    Timothy and Holly Chipps did not hear the message regarding Gabby's incident until the morning of February 9, 2020, and immediately returned the call just after 7 a.m. on February 9.

299.    After many attempts to speak with a person at WPT, Timothy and Holly finally reached an on duty officer who told them he could share no information and would have his supervisor call them back.

300.    Timothy and Holly received a call from SOA, DOC employee Sergeant Weeks at approximately 8:16 a.m., more than 14 hours after Gabby's incident.

301.    SOA, DOC employee Sergeant Weeks informed Timothy and Holly that Gabby was found hanging in her isolated and unmonitored jail cell during a shift change at approximately 6 p.m. on February 8, while the guards were doing a final count.

302.    SOA, DOC employee Sergeant Weeks stated the guards discovered Gabby hanging and cut her down.

303.    Timothy and Holly Chipps asked SOA, DOC employee Sergeant Weeks why Gabby was left in an isolated and unmonitored cell.

304.    SOA, DOC employee Sergeant Weeks informed Timothy and Holly Chipps that although WPT has monitored cells, Gabby was placed in an isolated and unmonitored cell as a disciplinary measure.

305.    SOA, DOC employee Sergeant Weeks then became defensive, and stated Timothy and Holly could speak with Superintendent Shannon McCloud.

306.    Timothy and Holly requested that Sergeant Weeks have Shannon McCloud call them.

307.    Timothy and Holly Chipps immediately began the hour plus drive to Southcentral Peninsula Hospital, given winter road conditions, and arrived in time to see Gabby just before she was medevaced to Anchorage.

308.    Timothy and Holly then drove back to their home to make arrangements to drive to Anchorage to see Gabby the next day.

309.    On or about February 10, 2020, Timothy and Holly Chipps drove to Anchorage to see Gabby and talk with her doctors.

310.    In August, 1995, SOA, DOC approved policy number 807.20, Suicide Prevention and Awareness, which states in pertinent part: "The Superintendent shall notify family members or others designated by the prisoner in case of serious illness, injury, or death of a prisoner per policy #807.04."

311.    In June, 2008, SOA, DOC approved policy number 808.17, Notification of Serious Illness, Injury, or Death of a Prisoner, which states in relevant part: "In the event of serious illness or injury, the Superintendent shall ensure that the individual designated by the prisoner to be contacted in the event of an emergency is notified."

Complaint For Damages                                                                Page 50 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 50 of 84

312. Defendants failed to notify Timothy Chipps, Gabby's designated emergency contact, nor Holly Chipps, Gabby's family member, until more than five hours after the February 8 incident, in violation of SOA, DOC policies 807.20 and 808.17.

313. During this five hour period, Gabby was unable to make any decisions about her medical care, and Timothy and Holly Chipps were unable to assist Gabby's medical providers in making decisions about her medical care.

## V. Defendants Demanded to Know Why Holly Chipps Requested a Rape Kit for Gabby.

314. Because of this incident, Holly Chipps, Timothy Chipps, and family and loved ones were seeking answers as to why this had happened while Gabby was in the care of SOA, DOC.

315. Due to this, on or about February 12, 2020, Holly Chipps requested that SOA, DOC conduct a rape kit for Gabby.

316. On or about February 14, 2020, SOA, DOC investigator Johnny Wallace called Holly Chipps and demanded to know why Holly Chipps had requested SOA, DOC conduct a rape kit for Gabby. Holly Chipps explained that Gabby's family and loved ones were trying to seek answers as to why this happened while Gabby was in the care of SOA, DOC.

317. At no time did SOA, DOC conduct a sexual assault examination of Gabby.

Complaint For Damages
*Chipps, et al. vs. Lovell, James*
Page 51 of 84

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 51 of 84

### W. Superintendent McCloud Did Not Call Timothy and Holly Chipps Back Until More Than a Week Later.

318.  On February 9, 2020, after many phone call attempts to speak with a WPT officer, Timothy and Holly Chipps spoke with Sergeant Weeks, more than 14 hours after Gabby's incident occurred.

319.  Sergeant Weeks told Timothy and Holly that WPT guards found Gabby hanging in her cell.

320.  When Timothy and Holly asked Sergeant Weeks specific questions about the incident, Sergeant Weeks became defensive, and told the Chipps they could speak with Superintendent Shannon McCloud.

321.  Timothy and Holly requested that Sergeant Weeks have Shannon McCloud call them back to discuss Gabby's incident.

322.  Superintendent McCloud did not call Holly and Timothy back, so Timothy called and left a message for Superintendent McCloud to call the Chipps.

323.   Superintendent McCloud still did not call the Chipps back until more than a week later.

324.  Gabby remained hospitalized for an extended period of time into March 2020.

325.  Upon her hospital discharge, Gabby returned to her parents' home.

326.  Gabby currently resides at her parents' home.

327.  Gabby requires extensive care to function and stay alive.

Complaint For Damages                                                    Page 52 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 52 of 84

328.    Gabby did not have permanent physical impairment or disfigurement prior to this incident.  Exhibit 8.

329.    Gabby has severe permanent physical impairment.

330.    Gabby's physical condition substantially and permanently limits one or more of her major life activities.

331.    Gabby is severely disfigured.

332.    Gabby's injuries have marred her physical appearance and caused a degree of unattractiveness sufficient to bring negative attention or embarrassment.  Exhibit 9.

333.    Since Gabby's hospital discharge, Gabby's mother has acted as primary caregiver for in home care.

334.    Gabby also receives medical care from outside providers who come to her home on a routine basis. Gabby also has to return to medical facilities for care.

335.    Gabby has very impaired vision and cannot see.

336.    Gabby cannot read.

337.    Gabby cannot speak.

338.    Gabby cannot feed herself.

339.    Gabby cannot walk.

340.    Gabby cannot bathe herself.

341.    Gabby requires a full-time caregiver for the rest of her life.

## X. Defendants Failed to Provide Records and video of Gabby's Incident to Gabby's Family.

342.    In May, 2020, Gabby's parents and guardians, Timothy and Holly Chipps, requested from SOA, DOC all records and video in its possession concerning their daughter, Gabby, and the February 8, 2020 incident.  At that time, Timothy and Holly Chipps informed SOA, DOC of their willingness to enter into an agreement to prevent the disclosure of records and videos/pictures concerning Gabby to any other parties or persons so as to address any SOA, DOC's concerns that disclosing these materials to the Chipps would compromise security.  See Exhibit 10.

343.    In response to the May 2020 request, Defendants refused to disclose records and videos concerning Gabby to Timothy and Holly Chipps.  *See* Exhibit 10.

344.    Defendants possess numerous records and videos concerning Gabby, and the February 8, 2020 incident, that have not been disclosed to her parents and guardians, Timothy and Holly Chipps.  *See* Exhibit 10.

## Y. Defendants' Policies and Practices Are In Violation of 1) National Standards, 2) SOA, DOC's Own Policies and Procedures, and 3) In Reckless Disregard for the Constitutional Rights of Gabrielle Chipps.

345.    The 2010 ACLU report, the 2015 SOA, DOC Review and inmate deaths, and Defendants' treatment of Gabby, demonstrate that Defendants' policies and practices are in violation of national standards, SOA, DOC's own policies, and in reckless disregard of the constitutional rights of Gabby Chipps.

Complaint For Damages                                                              Page 54 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 54 of 84

346.    Based on Defendants' policies and practices, a substantial number of inmates with suicide risk and mental illness are not appropriately assessed, evaluated, and treated pursuant to policy 807.20 to avoid having to deal with these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

347.    Defendants' policies and practices are to house inmates with suicide risk and mental illness in isolation and unmonitored, through segregated housing, as a disciplinary measure, to avoid having to deal with these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

348.    Under Defendants' policies and practices, inmates with suicide risk and mental illness that are placed in segregated housing are deprived of necessary mental health and medical care pursuant to policy 807.20, to avoid having to deal these inmates, and purely for convenience of the staff, despite the known serious risks this poses to the inmates.

349.    Defendants are in possession of Gabby's medical records relating to the facts discussed in this complaint.

350.    Defendants are in possession of Gabby's correctional institutional file relating to facts discussed in this complaint.

351.    Defendants are in possession of other medical records and correctional institutional records relating to Gabby.

352.    Despite Timothy and Holly Chipps' requests, Defendants have not provided complete medical records of Gabby.

353.     Despite Timothy and Holly Chipps' requests, Defendants have not provided complete institutional records of Gabby.

354.     Defendants are in possession of records and materials documenting Gabby's hanging incident.

355.     Despite Timothy and Holly Chipps' requests, Defendants have not provided the Chipps complete records and materials in its possession documenting Gabby's hanging incident.

356.     Defendants are in possession of pictures documenting Gabby's hanging incident.

357.     Defendants are in possession of video footage documenting Gabby's hanging incident.

358.     Defendants are in possession of additional video footage, in addition to the hanging incident, relating to Gabby while in custody.

359.     Defendants are in possession of video footage relating to SOA, DOC employees and agents while Gabby was in custody.

360.     Defendants are in possession of ACLU reports documenting DOC failures. *See* Exhibit 11.

361.     Defendants are in possession of SOA, DOC policies and procedures.

362.     Defendants are in possession of the SOA 2015 review documenting its failures. *See* Exhibit 12.

Complaint For Damages                                                      Page 56 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 56 of 84

363. One of the policies identified by DOC as a policy applicable to this matter is DOC policy 104.04 Death of a Prisoner.

364. This is a public document available on the internet. Exh. 13.

365. SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC provide the public with information regarding Gabby's hanging incident.

366. SOA, DOC did not provide the public with information regarding Gabby's hanging incident.

367. SOA, DOC did not provide Plaintiffs with any information that was provided to the public regarding Gabby's hanging incident.

368. SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC photograph all of Gabby's property removed from the scene of the incident.

369. SOA, DOC did not photograph all of Gabby's property removed from the scene of the incident.

370. DOC did not provide Plaintiffs with photographs of all of Gabby's property removed from the scene of the incident.

371. SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC identify all inmate witnesses to the incident, including anyone who may have information about the incident.

372. SOA, DOC did not provide Plaintiffs with the identity of all inmate witnesses to the incident, including anyone who may have information about the incident.

Complaint For Damages                                                                 Page 57 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 57 of 84

373.    DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC inventory all of Gabby's in-cell property at the time of the incident.

374.    SOA, DOC did not inventory all of Gabby's in-cell property at the time of the incident.

375.    SOA, DOC did not provide Plaintiffs with the inventory of all of Gabby's in-cell property at the time of the incident.

376.    Gabby was in custody at Wildwood Pretrial Facility from 1/22/2020 to 2/8/2020, a period of approximately 18 days.

377.    SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC make 3 copies of all video 24 hours preceding Gabby's incident.

378.    SOA, DOC claims that DOC video evidence shows that on 2/8/2020 at 16:32:46 Officer Mangle conducts a walkthrough of Gabby's cell, at 17:08:57 Officer Fisher conducts a walkthrough of Gabby's cell, at 17:10:55 Officer Fisher is at cell 311 (Gabby's cell), at 17:27:35 Officer Mangle conducts a walkthrough at cell 311.

379.    SOA, DOC failed to preserve the video immediately preceding Gabby's incident depicting the walkthrough of Officer Mangle and Officer Fisher on 2/8/2020 at 16:32:46, 17:08:57, 17:10:55 and 17:27:35.

380.    SOA, DOC failed to provide to Plaintiffs the video immediately preceding Gabby's incident depicting the walkthrough of Officer Mangle and Officer Fisher on 2/8/2020 at 16:32:46, 17:08:57, 17:10:55 and 17:27:35.

Complaint For Damages                                                     Page 58 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 58 of 84

381. SOA, DOC claims that Officer Allie White was at cell 311 (Gabby's cell) on 2/8/2020 at 18:01:18.

382. SOA, DOC failed to preserve the 24 hour time stamped video recording with the time stamp showing Officer A. White was at cell 311 on 2/8/2020 at 18:01:18.

383. SOA, DOC failed to provide to Plaintiffs the 24 hour time stamped video recording with the time stamp showing Officer A. White was at cell 311 on 2/8/2020 at 18:01:18.

384. SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC make 3 copies of "any video which has relevance" to Gabby's hanging incident.

385. Gabby's incident occurred while in custody at Wildwood for 18 days, so any video of Gabby at Wildwood would have relevance to her incident.

386. SOA, DOC failed to preserve any video evidence of Gabby on any of the following days: 1/22/2020, 1/23/2020, 1/26/2020, 1/29/2020, 1/30/2020, 2/1/2020, 2/2/2020, 2/3/2020, 2/4/2020, 2/6/2020.

387. SOA, DOC did not provide to Plaintiffs any video evidence of Gabby on any of the following days: 1/22/2020, 1/23/2020, 1/26/2020, 1/29/2020, 1/30/2020, 2/1/2020, 2/2/2020, 2/3/2020, 2/4/2020, 2/6/2020.

388. SOA, DOC failed to preserve all of the video evidence of Gabby on the following days: 1/24/2020, 1/25/2020, 1/27/2020, 1/28/2020, 1/31/2020, 2/5/2020, 2/7/2020, 2/8/2020.

Complaint For Damages                                                                 Page 59 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 59 of 84

389.    SOA, DOC did not provide Plaintiffs all of the video evidence of Gabby on the following days: 1/24/2020, 1/25/2020, 1/27/2020, 1/28/2020, 1/31/2020, 2/5/2020, 2/7/2020, 2/8/2020.

390.    SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC conduct a Critical Incident Stress debriefing following Gabby's incident.

391.    SOA, DOC did not conduct a Critical Incident Stress debriefing.

392.    SOA, DOC did not provide Plaintiffs with information and records regarding any Critical Incident Stress debriefing conducted by SOA, DOC.

393.    SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC issue a press release following Gabby's incident.

394.    SOA, DOC failed to issue a press release following Gabby's incident.

395.    SOA, DOC did not provide to Plaintiffs any press release issued by SOA, DOC following Gabby's incident.

396.    SOA, DOC policy 104.04, Death of a Prisoner, requires that SOA, DOC audio record all interviews with inmates regarding Gabby's incident.

397.    SOA, DOC failed to audio record all interviews with inmates regarding Gabby's incident.

398.    SOA, DOC did not provide to Plaintiffs any audio recorded interviews with inmates regarding Gabby's incident.

399.    At all times herein, Defendants acted under color of state law.

Complaint For Damages                                                    Page 60 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 60 of 84

400. Plaintiffs initially filed 42 U.S.C. 1983 claims and Alaska state law claims against Defendants SOA, DOC, Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, and Does 1-10 in United States District Court for the District of Alaska, Third Judicial District. See Case No. 3:21-cv-00011-JMK, Document 10, First Amended Complaint.

401. Defendant SOA, DOC has asserted Eleventh Amendment immunity under the United States Constitution to all state law claims asserted by Plaintiffs in federal court.

402. Because Defendant SOA, DOC has asserted Eleventh Amendment immunity to all state law claims asserted by Plaintiffs in federal court, Plaintiffs have asserted all state law claims against SOA, DOC in Alaska Superior Court. *Chipps, et al. vs. State of Alaska, Department of Corrections, et al.*, 3AN-21-06142CI.

403. Defendants had a special relationship with Gabrielle Chipps in that she was in SOA, DOC care, giving rise to a legal duty to exercise the utmost caution under Alaska law and the Alaska Constitution, including but not limited to Article 1, Section 7 of the Alaska Constitution to provide Gabby with appropriate mental health and medical care and monitoring/supervision, including, but not limited to, conditions of confinement that would have prevented injury to Gabby while she was in the care of Defendants and SOA, DOC.

404. According to SOA, DOC Policy 1350.08, it is the Policy of SOA, DOC and Defendants to "ensure that pretrial defendants are supervised with the most appropriate conditions and responses."

Complaint For Damages                                                                 Page 61 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 61 of 84

405. At the times relevant to this complaint, AS 33.30.011 imposed a statutory duty on the Commissioner of SOA, DOC and Defendants to provide necessary medical services including psychological or psychiatric treatment for prisoners in correctional facilities.

406. At the times relevant to this complaint, 22 AAC 05.120(A) imposed a regulatory duty on the Commissioner of SOA, DOC and Defendants to establish procedures for the provision of adequate medical services to all prisoners; 22 AAC 05.121(a) imposed a regulatory duty on SOA, DOC and Defendants to provide medically necessary health care services to prisoners regardless of a prisoner's ability to pay or arrange for payment or coverage for the services.

407. At the times relevant to this Complaint SOA, DOC's policies and procedures set out in Chapter 807 imposed a duty of care on SOA, DOC and Defendants to provide to inmates access to adequate medical care services comparable to those available in the general public, including to ensure that essential health care services are available from other sources if the services are not available within the institution.

408. At the times relevant to this complaint, because SOA, DOC and Defendants had custody of Gabby, thereby depriving her of her opportunity to obtain independent medical care, Defendants had a special relationship with her that imposed a heightened common law duty of care upon Defendants to protect her.

Complaint For Damages
*Chipps, et al. vs. Lovell, James*

Page 62 of 84

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 62 of 84

# FIRST CAUSE OF ACTION

## (42 U.S.C. Section 1983—Violation of Civil Rights Against Defendants James Lovell and Does 1-10 in Their Individual Capacity)

409.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

410.    Defendant James Lovell and Defendants in the related matter of Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, Dwight Stallman, Allie White, Samuel Ambrosia, Stephen Barlow, Mindy Lawrence and Does 1-10, are, and were at all times relevant to this complaint, SOA, DOC correctional officers and/or mental health and medical staff and supervisors.  As such, Defendants were responsible for the supervision of SOA, DOC correctional officers and/or mental health and medical staff, and for providing mental health and medical treatment to Gabrielle Chipps pursuant to SOA, DOC policies and procedures, and national policies and protocols, while Gabrielle was in the care of SOA, DOC.

411.    Defendant James Lovell and Defendants in the related matter of Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, Dwight Stallman, Allie White, Samuel Ambrosia, Stephen Barlow, Mindy Lawrence and Does 1-10, in their individual capacity, acted under color of state law, deprived Plaintiff of constitutional rights, privilege, or immunities.

412.    Defendant James Lovell and related Defendants Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, Dwight Stallman, Allie White, Samuel Ambrosia, Stephen Barlow,  Mindy Lawrence and Does 1-10, as supervisory defendants in their

Complaint For Damages                                        Page 63 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 63 of 84

individual capacity, acted under color of state law, deprived Plaintiff of constitutional rights, privilege, or immunities.

413. Defendant James Lovell and related Defendants Shannon McCloud, James Milburn, Beth Selby, Gerad Siamani, Dwight Stallman, Allie White, Samuel Ambrosia, Stephen Barlow, Mindy Lawrence and Does 1-10 engaged in conduct and omissions, including but not limited to, the following:

414. Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel did not leave Gabby unattended.

415. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was left unattended on a regular basis.

416. Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel kept Gabby under constant observation and failed to document in writing that SOA, DOC personnel removed items Gabby could use to inflict self-harm.

417. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not kept under constant observation and Gabby was allowed to keep items Gabby could use to inflict self-harm.

418. Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that SOA, DOC personnel housed Gabby in a safe and appropriate suicide prevention cell.

Complaint For Damages                                                                 Page 64 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 64 of 84

419. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not housed in a safe and appropriate suicide prevention cell.

420. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete a written Suicide Prevention Status Orders-Placement, attached as Exhibit 2 and document and distribute the written Suicide Prevention Status Orders-Placement to all SOA, DOC designated staff Exhibit 2.

421. Despite Gabby being placed on suicide precautions on January 22, 2020, SOA, DOC failed to document in writing that it observed Gabby based on the "order documented on the Suicide Prevention Status Orders—Placement." Exhibit 2.

422. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not properly assessed or evaluated to ensure her safety.

423. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not properly observed and monitored to ensure her safety.

424. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete a written SAFE-T form attached as Exhibit 3, as required by its policies and procedures, to determine Gabby's "degree of risk, level of supervision needed, treatment," and whether Gabby's "suicide risk is associated with symptoms of mental illness, substance use, or situational." Exhibit 3.

425. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel met with Gabby every work day to reassess Gabby's risk by completing a written SAFE-T form. Exhibit 3.

Complaint For Damages                                                    Page 65 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 65 of 84

426. Despite Gabby being placed on suicide precautions on January 22, 2020, there is no documentation of a written suicide prevention plan for Gabby attached as Exhibit 6.

427. Despite Gabby being placed on suicide precautions on January 22, 2020, there is no documentation or dissemination of a written suicide prevention plan attached as Exhibit 6 to all SOA, DOC employees responsible for Gabby's safety.

428. Despite Gabby being placed on Suicide precautions on January 22, 2020, there is no documentation and no evaluation in writing of the need to transfer Gabby to another institution to provide mental health services or document the reasons why a transfer cannot occur.

429. Despite Gabby being placed on suicide precautions on January 22, 2020, no one documented in writing that Gabby shall be housed in a suicide prevention cell.

430. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not housed in a suicide prevention cell.

431. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel shall maintain a clear and unobstructed view of Gabby at all times.

432. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to maintain a clear and unobstructed view of Gabby at all times.

Complaint For Damages                                                        Page 66 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 66 of 84

433. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that SOA, DOC personnel shall maintain appropriate staff interaction with Gabby.

434. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to maintain appropriate staff interaction with Gabby.

435. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing that Gabby shall be placed in a cell that ensures quick intervention should Gabby engaged in self-injurious behaviors.

436. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was not placed in a cell that ensures quick intervention should Gabby engage in self-injurious behaviors.

437. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document in writing a search of Gabby's segregation cell and failed to document in writing all items and areas that could be used for self-harm.

438. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to conduct a search of Gabby's segregation cell to determine all items and areas that could be used for self-harm.

439. Despite Gabby being placed on suicide precautions on January 22, 2020, Defendants failed to document and complete in writing any Suicide Prevention Status Orders attached as Exhibit 2 for Gabby. Exhibit 2.

Complaint For Damages                                                                 Page 67 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 67 of 84

440. Despite Gabby being placed on suicide precautions on January 22, 2020, Gabby was placed in an isolated and unmonitored cell as a disciplinary measure.

441. Despite Gabby being placed on suicide precautions on January 22, 2020, a punitive measure was inflicted on Gabby by placing her in an isolated and unmonitored cell.

442. Despite Gabby being placed on Suicide Precautions since January 22, 2020, and despite Gabby's very recent and serious mental health breakdowns and Gabby demonstrating serious mental health decline, Defendant Selby and all other Defendants failed to complete in writing the SOA, DOC SAFE-T form attached as Exhibit 3.

443. Despite Gabby being placed on suicide precautions since January 22, 2020, and despite Gabby's very recent and serious mental health breakdowns and Gabby demonstrating serious mental health decline, Defendant Selby and all other Defendants failed to follow relevant SOA, DOC Suicide Prevention 807.20 Policies and Procedures.

444. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document a written Suicide Prevention Safety Plan, attached as Exhibit 6 for Gabby.

445. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing the underlying reasons for Gabby's suicidal risk.

446. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing an initial safety plan for Gabby using the Suicide Prevention Safety Plan attached as Exhibit 6 to address Gabby's suicide risk by incorporating "identifying protective factors, future goals, and support system." Exhibit 6.

447. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document a written treatment plan that includes monitoring strategies to prevent future relapse.

448. Despite Defendants placing Gabby on suicide precautions on January 22, 2020, and observing Gabby's continuing serious mental health decline while in segregation housing, Selby and the other Defendants failed to document in writing any conditions indicating a need to change Gabby's suicide prevention status.

449. Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown. Defendants also knew, or should have known, that Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer.

450. Instead of providing mental health treatment for Gabby, Defendants ignored, neglected, and aggravated her mental health breakdown.

451.    Defendants engaged in conduct and omissions described herein in violation of 42 U.S.C. Section 1983.

452.    Among other things, Defendants knew or should have known, more than 10 years ago, that SOA, DOC policies and practices violated national standards and protocols regarding the need for continual monitoring of inmates on suicide precautions while in segregated housing.  Defendants further knew, or should have known, that failing to continually monitor Gabby while on suicide precautions in segregated housing, and while her mental health was seriously deteriorating, violated national standards and violated SOA, DOC suicide prevention policies and procedures.

453.    Defendants had a special relationship with Gabrielle Chipps in that she was in SOA, DOC care, giving rise to a legal duty to exercise the utmost caution under Alaska law and the Alaska Constitution, including but not limited to Article 1, Section 7 of the Alaska Constitution, and the Eighth and Fourteenth Amendments of the United States Constitution to provide Gabby with appropriate mental health and medical care and monitoring/supervision, including, but not limited to, conditions of confinement that would have prevented injury to Gabby while she was in the care of SOA, DOC.

454.    Defendants committed affirmative acts and failed to act making intentional decisions regarding the conditions under which Gabby was confined and/or the denial of needed medical care.

455.    Defendants' affirmative acts and failures to act placed Gabby in a position of an actual, particularized danger by creating or exposing Gabby to a danger that she would not have otherwise faced.

456.    The conditions of confinement and/or denial of needed medical care put Gabby at substantial risk of suffering serious harm.

457.    Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved, making the consequences of Defendants' conduct obvious.

458.    Defendants acted and failed to act with deliberative indifference to a known or obvious danger.

459.    Defendants' affirmative actions and failures to act that created the actual, particularized danger caused injury to Gabby that was foreseeable.

460.    By not taking such measures the Defendants caused Gabby's injuries.

461.    Defendants, acting under color of law in their individual and personal capacities, were deliberately indifferent to Gabby Chipps' rights, privileges, and immunities protected under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Eighth and/or Fourteenth Amendments of the United States Constitution.  Defendants knew, or should have known, that Gabby was experiencing a serious mental health breakdown.  Defendants also knew, or should have known, that Gabby had received a "time served" offer from the Kenia District Attorneys' Office, which

would allow her to be released from segregation housing and the custody of Defendants under the terms of the offer. Defendants acted with deliberate indifference by, among other things, ignoring, neglecting, and aggravating Gabby's mental health breakdown and failing to monitor and failing to provide mental health and medical treatment while Gabby was on suicide precautions in segregation housing. Defendants had more than 10 years actual notice that such failures were in violation of national standards, and in violation of SOA, DOC suicide prevention policies while Gabby was in SOA, DOC care.

462. Defendants' acts and failures to act were so closely related to the deprivation of Gabby's rights as to be the moving force that caused the ultimate injury.

463. As a direct result of the conduct and omissions of Defendants, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

464. As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' constitutional rights. Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

Complaint For Damages                                                                 Page 72 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 72 of 84

## SECOND CAUSE OF ACTION

**(42 U.S.C. Section 1983—Violation of Civil Rights Against Supervisory Defendant James Lovell and Does 1-10 in Their Individual Capacity)**

465. Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

466. Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, as if fully set forth herein.

467. The actions and failure to act of Defendant James Lovell and related Defendants' subordinates deprived Gabby of her particular rights under 42 U.S.C. Section 1983 and Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Eighth and Fourteenth Amendments of the United States Constitution.

468. Defendants directed their subordinates in these actions and failures to act that deprived Gabby of these rights.

469. Defendants set in motion or knowingly refused to terminate the series of actions and failures to act by their subordinates that they knew or reasonably should have known would cause the subordinates to deprive Gabby of these rights.

470. Defendants knew their subordinates were engaging in these actions and failures to act and knew or reasonably should have known that their subordinates' conduct would deprive Gabby of these rights; and Defendants failed to act to prevent their subordinates from engaging in such conduct.

Complaint For Damages                                                    Page 73 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 73 of 84

471.     Defendants disregarded the known or obvious consequence that a particular training deficiency or omission would cause their subordinates to violate Gabby's constitutional rights; and that deficiency or omission actually caused their subordinates to deprive Gabby of her constitutional rights.

472.     Defendants engaged in acts and failed to act, showing reckless indifference to the deprivation by their subordinates of the rights of others.

473.     Defendant's acts and failures to act were so closely related to the deprivation of Gabby's rights as to be the moving force that caused the ultimate injury.

474.     As a direct result of the conduct and omissions of Defendant James Lovell and other related Defendants, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

475.     As a direct result of Defendant James Lovell and related Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' constitutional rights.  Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

Complaint For Damages                                                                 Page 74 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 74 of 84

## THIRD CAUSE OF ACTION

### (42 U.S.C. Section 1983) (Particular Rights – Fourteenth Amendment -Detainee's Claim Re Conditions of Confinement/Medical Care)

476.   Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

477.   Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action and the Second Cause of Action, as if fully set forth herein.

478.   Under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Eighth and Fourteenth Amendment of the United States Constitution, Gabby has the right to safe conditions of confinement and needed medical care while in SOA, DOC custody.

479.   Defendant made an intentional decision regarding the conditions under which Gabby was confined and the denial of medical care to Gabby.

480.   The conditions of confinement and denial of medical care put Gabby at substantial risk of suffering serious harm.

481.   The defendants did not take reasonable available measures to abate or reduce that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious.

482.   By not taking such measures, Defendants caused Gabby's injuries.

483.    As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' rights under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Fourteenth Amendment of the United States Constitution.  Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## FOURTH CAUSE OF ACTION

### (42 U.S.C. Section 1983) (Particular Rights – Fourteenth Amendment -Pretrial Detainee Claim of Failure to Protect)

484.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

485.    Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action and the Third Cause of Action, as if fully set forth herein.

486.    Under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Eighth and Fourteenth Amendment of the United States Constitution, Gabby has the right to be protected while in custody.

487.    Defendants made an intentional decision regarding the conditions under which Gabby was confined.

Complaint For Damages                                                                                    Page 76 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 76 of 84

488.    Those conditions put the plaintiff at substantial risk of suffering serious harm.

489.    The Defendants did not take reasonable available measures to abate or reduce that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and

490.    By not taking such measures, Defendants caused Gabby's injuries.

491.    As a direct result of Defendant's conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' rights under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Fourteenth Amendment of the United States Constitution.  Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## FIFTH CAUSE OF ACTION

### (42 U.S.C. Section 1983) (Particular Rights – Fourteenth Amendment -Pretrial Due Process—State-Created Danger)

492.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

493. Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action and the Third Cause of Action, as if fully set forth herein.

494. Under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Eighth and Fourteenth Amendment of the United States Constitution, Gabby has the right to be free from a government employee affirmatively placing her in a position or situation of actual, particularized danger.

495. Defendants committed affirmative actions, and failures to act, as set forth in the preceding paragraphs as if fully set forth herein.

496. Defendants affirmative actions and failures to act placed Gabby in a position or situation of actual, particularized danger by creating or exposing Gabby to danger she would not have otherwise faced.

497. Defendants acted with deliberate indifference to a known or obvious danger to Gabby.

498. Defendants' affirmative actions and failures to act that created the actual particularized danger caused injury to Gabby that was foreseeable.

499. As a direct result of Defendant's conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' rights under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, and the Fourteenth Amendment of the United States Constitution. Consequently, Plaintiffs seek payment by

Complaint For Damages                                                          Page 78 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 78 of 84

Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## SIXTH CAUSE OF ACTION

**(42 U.S.C. Section 1983—Loss of Fundamental Parental Right to Companionship and Society Against All Defendants/Interference with Parent/Child Relationship**

500.    Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

501.    Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, and the Fifth Cause of Action, as if fully set forth herein.

502.    Based on Defendants' actions and inactions, Plaintiffs Holly Chipps and Timothy Chipps have suffered a loss of their fundamental parental right to companionship and society regarding Gabby Chipps, and Holly and Timothy Chipps' relationship has been fundamentally and permanently altered with Gabby Chipps.

503.    Defendant's actions and inactions were deliberately indifferent to the rights, privileges, and immunities of Holly and Timothy Chipps under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment of the United States Constitution.

Complaint For Damages                                                                 Page 79 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 79 of 84

504. As a direct result of the conduct and omissions of Defendant, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

505. As a direct result of the conduct and omissions of Defendant, Holly Chipps and Timothy Chipps have suffered, and will continue to suffer permanent loss of their fundamental parental right to companionship and society regarding Gabby Chipps.

506. As a direct result of Defendants' conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps, Holly Chipps, and Timothy Chipps' rights under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment of the United States Constitution. Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## SEVENTH CAUSE OF ACTION

### (42 U.S.C. Section 1983) Interference with Child/Parent Relationship

507. Plaintiffs re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs as if fully set forth herein.

508. Plaintiffs specifically re-allege, and incorporate by reference, all allegations set forth in the preceding paragraphs in the First Cause of Action, the Second Cause of Action, the Third Cause of Action, the Fourth Cause of Action, the Fifth Cause of Action, and the Sixth Cause of Action, as if fully set forth herein.

509. Based on Defendants' actions and inaction, Plaintiff Gabby Chipps has suffered a loss of her fundamental right to companionship and society of her parents and Gabby's relationship with her parents has been fundamentally and permanently altered.

510. Defendants' actions and inaction were deliberately indifferent to the rights, privileges, and immunities of Gabby Chipps under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment of the United States Constitution.

511. As a direct result of the conduct and omissions of Defendant, Gabby Chipps has suffered and will continue to suffer permanent bodily and physical injuries, emotional distress, pain and suffering, anguish, medical costs, loss of enjoyment of life, general, special and consequential damages, and a deprivation of constitutional rights in an amount not yet ascertained but to be determined at trial.

512. As a direct result of the conduct and omissions of Defendant, Gabby Chipps has suffered, and will continue to suffer permanent deprivation of the companionship and society of her parents.

Complaint For Damages                                                                 Page 81 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 81 of 84

513.     As a direct result of Defendant's conduct and omissions, Plaintiffs have been compelled to hire attorneys to bring this action and render legal assistance to Plaintiffs to seek recovery for the loss due to the deprivation of Gabby Chipps' rights under Alaska law, the Alaska Constitution including but not limited to Article 1, Section 7, the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment of the United States Constitution. Consequently, Plaintiffs seek payment by Defendants of reasonable attorney fees, expert fees, and costs pursuant to 42 U.S.C. Section 1988.

## PRAYER FOR RELIEF

WHEREFORE, having pled Plaintiffs' complaint, Plaintiffs requests a judgment against Defendants as follows:

1.  For economic and non-economic damages for, including but not limited to, treatment expenses, physical injury, pain, suffering, emotional distress, inconvenience, humiliation, loss of enjoyment of life, loss of consortium, lost wages, loss of earning capacity, permanent disability and severe disfigurement.

2.  For damages respecting loss of fundamental parental right to companionship and society, interference with parent/child relationship, and interference with child/parent relationship.

3.  For reasonable attorney's fees, expert fees, and costs as allowable by law, including but not limited to payment pursuant to 42 U.S.C. Section 1988.

4.  For interest as allowable by law.

Complaint For Damages                                                                 Page 82 of 84
*Chipps, et al. vs. Lovell, James*

Case 3:22-cv-00047-SLG   Document 1   Filed 03/10/22   Page 82 of 84

5.  For punitive damages as allowable by law.

6.  For such other relief as the Court may deem just and proper.

7.  Plaintiff reserves the right to amend this complaint.

DATED at Anchorage, Alaska this 9th day of March, 2022.

LIBBEY LAW OFFICES, LLC
Attorneys for Plaintiff Gabrielle Chipps


By: ___s/Daniel Libbey_____
Daniel Libbey (0012105)

DATED at Anchorage, Alaska this 9th day of March, 2022.

LIBBEY LAW OFFICES, LLC
Attorneys for Plaintiff Holly/Timothy Chipps


By: ___s/Colleen Libbey_____
Colleen Libbey (0012104)

**CERTIFICATE OF SERVICE**

I hereby certify that on March 9, 2022, a copy
of the foregoing was served electronically, upon:

Aisha Tinker Bray Assistant Attorney General
Office of the Attorney General
1031 W 4th Avenue, Suite 200
Anchorage, AK 99501
aisha.bray@alaska.gov
fai.law.ecf@alaska.gov

Colleen Libbey
Libbey Law Offices, LLC
604 West Second Avenue
Anchorage, Alaska 99501
colleen@libbeylaw.com

/s/ Daniel Libbey